An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of Appellate Procedure.

IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA25-1200

Filed 5 August 2026

Guilford County, Nos. 22JA000417-400, 22JA000418-400, 22JA000419-400

IN THE MATTER OF:

A.M., K.M., M.W.

Appeal by respondent-mother from orders entered 19 September 2025 by Judge Charlene Y. Armstrong in Guilford County District Court. Heard in the Court of Appeals 21 July 2026.

> *Office of the Parent Defender, by Assistant Parent Defender Benjamin J. Kull and Parent Defender Annick Lenoir-Peek, for respondent-appellant mother.*
>
> *North Carolina GAL Appellate Counsel, by Matthew D. Wunsche, for guardian ad litem.*
>
> *Mercedes O. Chut, P.A., by Mercedes O. Chut, for petitioner-appellee Guilford County Department of Health and Human Services.*

FLOOD, Judge.

Mother appeals from the trial court's orders terminating her parental rights. On appeal, Mother argues the trial court abused its discretion in denying her motion to continue where she was never given notice of the termination hearing date, and in

the alternative, she received ineffective assistance of counsel. Upon careful review, we conclude Mother has waived her first argument concerning sufficiency of notice for failing to object at trial, and Mother did not receive ineffective assistance of counsel because she has not shown prejudice.

## I. **Factual and Procedural Background**

This appeal arises from the trial court's termination of Mother's parental rights as to A.M., K.M., and M.W.[1] On 18 February 2022, after originally becoming involved with the family in 2021 when Mother was arrested for "probation violation, drug paraphernalia, identity Fraud/theft, [and] obtaining property by false pretenses[,]" Petitioner Guilford County Department of Health and Human Services filed juvenile petitions and assumed nonsecure custody of A.M., K.M., and M.W.

On 29 November 2022, the trial court held an initial adjudication and disposition hearing, and on 21 December 2022, the trial court entered an initial adjudication and disposition order, ruling that all three juveniles were dependent, and setting a primary permanency plan of reunification with no secondary plan. After several continuances, the first permanency planning hearing was held on 19 July 2024. The trial court subsequently entered an order changing the primary permanency play to adoption with a secondary plan of reunification, and determining that "it is in the best interest of the juveniles that termination of parental rights be

---

[1] We use initials to protect the minor children's identities pursuant to N.C. R. App. P. 42 (2025).

filed against" Mother.

Thereafter, Petitioner filed motions on 29 October 2024 to terminate Mother's parental rights. Petitioner tried to serve Mother on 6 December 2024 with notice of the motion seeking to terminate her parental rights by mailing the notice to her at the Greensboro Detention Center; however, that attempt failed as she was "no longer in custody . . . ." The trial court rescheduled the termination to 18 March 2025 because "service has not yet been obtained on the mother[.]" On 9 April 2025, prior to the scheduled termination hearing, the trial court entered another continuance order, rescheduling the termination hearing to 29 April 2025 because "service has not yet been obtained on the mother at a new address provided[.]" Several days later, on 15 April 2025, Mother was served by a sheriff with notice of the motion seeking to terminate her parental rights. The notice provided that "[n]otice of the date, time and location of the hearing and pretrial hearing will be mailed to you by the moving party after you file a response or thirty (30) days from the date of service if you do not file a response."

On 29 April 2025, the date for which the termination hearing had been scheduled, the trial court entered a continuance order providing that "this matter should be continued in that service was just obtained on the mother and the statutory time requirement period has not ran [sic] to allow mother time to respond to the Motion for TPR[.]" The trial court rescheduled the termination hearing to 22 July 2025, but no further notice was sent to Mother. At the termination hearing on 22 July

2025, Mother was not present, and Mother' counsel moved to continue the matter. The trial court denied the motion following a brief colloquy with Mother's counsel:

> [MOTHER'S COUNSEL]: Judge, I would just move to continue, your Honor. [Mother] has been -- was involved in the underlying case for sometime, although she didn't appear. Often times she'd appear on Webex, but I have lost contact with her, and [am] unsure where she is; and so as a result I'm requesting a continuance so that I can try to track her down.
>
> THE COURT: [Counselor], how long was the last contact?
>
> [MOTHER'S COUNSEL]: Six months, maybe[.]
>
> THE COURT: And she was served with a copy of this petition?
>
> [MOTHER'S COUNSEL]: My understanding she was. She was living with her father. I don't know. [Petitioner's counselor] may have some more information it sounds like.
>
> THE COURT: Was she served with a copy of the petition?
>
> [PETITIONER'S COUNSEL]: Yes, she was served with everything; and then also she had a visit yesterday with the children. She was reminded about the court date today.
>
> . . . .
>
> THE COURT: Okay. She's been served, so she had a duty to stay in contact with you. That was just in April.
>
> [MOTHER'S COUNSEL]: Yes, your Honor.
>
> THE COURT: So I will deny the Motion to Continue.

The trial court then heard the matter and subsequently terminated Mother's parental rights. Mother timely appealed.

- 4 -

## II. <u>Jurisdiction</u>

This Court has jurisdiction to review this appeal from a final judgment pursuant to N.C.G.S. §§ 7A-27(b) and 7B-1001(a)(4) (2023).

## III. <u>Analysis</u>

On appeal, Mother argues (A) the trial court abused its discretion in denying the motion to continue where it was under "the mistaken belief that [Mother] had been 'served with everything[,]'" and, in the alternative, (B) she received ineffective assistance of counsel. We address each argument in turn.

### A. Motion to Continue

Mother first argues the trial court abused its discretion in denying the motion to continue where Mother was never given notice of the termination hearing date. Specifically, Mother argues the trial court acted under "the mistaken belief that [Mother] had been 'served with everything[,]'" and that she was prejudiced by this as it "prevented her from participating in the hearing at which the fate of her family was being decided[.]" Mother, however, has abandoned this argument for failure to object at trial.

"Ordinarily, a motion to continue is addressed to the discretion of the trial court, and absent a gross abuse of that discretion, the trial court's ruling is not subject to review." *In re A.L.S.*, 374 N.C. 515, 516–17 (2020) (citation omitted). "Abuse of discretion results where the court's ruling is manifestly unsupported by reason or is so arbitrary that it could not have been the result of a reasoned decision." *In re J.E.*,

377 N.C. 285, 291 (2021).

When a party files a motion to terminate parental rights, notice of the motion to terminate must conform with N.C.G.S. § 7B-1106.1. *See* N.C.G.S. § 7B-1102(b) (2023). Notice under N.C.G.S. § 7B-1106.1 "shall include all of the following":

> (1) The name of the minor juvenile.
>
> (2) Notice that a written response to the motion must be filed with the clerk within 30 days after service of the motion and notice, or the parent's rights may be terminated.
>
> (3) Notice that any counsel appointed previously and still representing the parent in an abuse, neglect, or dependency proceeding will continue to represent the parents unless otherwise ordered by the court.
>
> (4) Notice that if the parent is indigent, the parent is entitled to appointed counsel and if the parent is not already represented by appointed counsel the parent may contact the clerk immediately to request counsel.
>
> (5) Notice that the date, time, and place of any pretrial hearing pursuant to [N.C.]G.S. [§] 7B-1108.1 and the hearing on the motion will be mailed by the moving party upon filing of the response or 30 days from the date of service if no response is filed.
>
> (6) Notice of the purpose of the hearing and notice that the parents may attend the termination hearing.

N.C.G.S. § 7B-1106.1(b) (2023). "[S]ection 7B-1106.1 directs the *petitioner* to notify the respondent that proceedings to terminate his or her parental rights have been commenced and that a TPR hearing will be held at a future date." *In re T.D.W.*, 203 N.C. App. 539, 542 (2010) (citation and second emphasis omitted). We have explained

that the purpose of section 7B-1106.1(b)(5) "appears to be that the movant would be required to subsequently serve a notice of hearing after the filing of a response to the motion to terminate parental rights or upon the expiration of time to do so." *In re M.R.B.*, 297 N.C. App. 63, 67 (2024).

In *In re T.D.W.*, the respondent argued the termination of parental rights order against her should be vacated because "the notice of the 'date, time, and place of the hearing' required by N.C.[G.S.] § 7B[-]1106.1(b)(5) was not sent to her in a timely manner[,]" as the notice of the hearing was sent thirty days late. *In re T.D.W.*, 203 N.C. App. at 543. On appeal, we explained that,

> [a]lthough this Court has rejected the contention that a failure to strictly comply with the general notice requirement of N.C.[G.S.] § 7B-1106.1(b) can be excused on the grounds that the parent who did not receive the required notice was not prejudiced, it is clear from an examination of our opinions in those case[s] that the error at issue there was either a total failure to provide the notice required by N.C.[G.S.] § 7B-1106.1(b) or a failure to provide important components of that notice required by N.C.[G.S.] § 7B-1106.1(b), rather than a failure to provide the subsequent notice required by N.C.[G.S.] § 7B-1106.1(b)(5). As a result, our decisions in *Alexander* and *D.A.* are not controlling on the issue of whether a failure to provide timely notice of the "date, time, and place of . . . the hearing on the motion" in accordance with N.C.[G.S.] § 7B-1106.1(b)(5) necessitates vacating a termination order entered in the absence of timely notice. Thus, contrary to [the respondent's] contentions, we are not persuaded that a failure to provide notice of the date, time, and place of the hearing to be held in connection with a termination motion pursuant to N.C.[G.S.] § 7B-1106.1(b)(5) inevitably requires an award of appellate relief.

*Id.* at 544–45. We then made two conclusions. First, under a harmless error standard, "there [was] no indication in the . . . record that [the respondent] was in any way prejudiced by the fact that notice of the 8 July 2009 hearing was sent on 18 June 2009 instead of 17 May [2009,]" because the respondent "did not appear on 8 July 2009, and her trial counsel informed the trial court that he had not heard from her in months" and the respondent "ha[d] not made any attempt to demonstrate how she was handicapped in either attending or presenting evidence at the 8 July 2009 hearing given the nature of the notice that she actually received." *Id.* at 545. Second, we concluded the respondent had "waived the right to object to any deficiencies[.]" *Id.* at 546. We reasoned:

> [T]his Court held in *In re J.S.L.,* 177 N.C. App. 151, 155[] . . . (2006), that a respondent parent who appeared at a termination hearing with counsel, participated in the hearing, and failed to object to the absence of proper notice waived the right to complain about the lack of proper notice on appeal. Although [the respondent] did not appear at the hearing, her trial counsel did. Despite having ample opportunity to object to the fact that notice that the termination hearing would be held on 8 July 2009 was not sent to [the respondent] until 18 June 2009, he did not do so.

*Id.* Thus, we affirmed the trial court. *Id.*

Similarly, here, Mother's argument regarding deficient notice is waived because Mother's counsel failed to object to the fact that there was no proper notice

pursuant to N.C.G.S. § 7B-1106.1(b)(5). *See id.* at 545–46.[2] Accordingly, we cannot say the trial court abused its discretion in denying Mother's motion to continue where her counsel requested the continuance because he had "lost contact" with her and did not object to any notice deficiency. Thus, we affirm.

## B. Ineffective Assistance of Counsel

Mother next argues, in the alternative, that "the matter should be remanded for a determination of whether [Mother] received ineffective assistance of counsel." Specifically, Mother argues this Court should remand to the trial court to determine whether Mother's counsel tried to inform Mother of the termination hearing date. We disagree.

"[Ineffective assistance of counsel] claims brought on direct review will be decided on the merits when the cold record reveals that no further investigation is

---

[2] Mother attempts to distinguish *In re T.D.W.*'s holding by arguing in her reply brief that "*In re T.D.W.* did not involve appellate review of a denied motion to continue, which is the relevant issue here in [Mother's] appeal[.]" Although *In re T.D.W.* did not involve a denied motion to continue, the principle remains the same, that the lack of objection by a party fails to preserve the specific notice argument at hand for review. In contrast, for example, this Court in *In re D.A.,* noted, in a footnote, the following with regard to a similar argument brought by the petitioner in that case:

> [the] [p]etitioner asserts that [the] [r]espondent failed to preserve this matter for review and cites *In re Howell . . .* for support. In *In re Howell,* the respondent failed to object to process and service and agreed at a termination hearing that service of process had been proper. Here, in contrast, the record reveals that [the] [r]espondent did not agree that notice complied with the statutory requirements, and [the] [r]espondent objected to at least some aspects of notice and/or service thereof on or prior to 6 June 2003.

169 N.C. App. 245, 247, fn. 1 (2005).

required . . . ." *In re C.W.N., Jr.*, 227 N.C. App. 63, 66 (2013) (citation omitted). "As an appellate court, we can only know what is included in the record before us." *In re A.R.C.*, 265 N.C. App. 603, 606 (2019).

"Parents have a right to counsel in all proceedings dedicated to the termination of parental rights." *In re L.C.*, 181 N.C. App. 278, 282 (2007) (citation and internal quotation marks omitted). "This statutory right includes the right to effective assistance of counsel." *In re Dj.L.*, 184 N.C. App. 76, 84 (2007) (citation omitted). "It is well established that attorneys have a responsibility to advocate on the behalf of their clients." *In re S.N.W.*, 204 N.C. App. 556, 560 (2010). "To prevail in a claim for ineffective assistance of counsel, [the] respondent must show: (1) counsel's performance was deficient or fell below an objective standard of reasonableness; and (2) [the] attorney's performance was so deficient she was denied a fair hearing." *In re J.A.A.*, 175 N.C. App. 66, 74 (2005) (citation modified). "To make the latter showing, the respondent must prove that there is a reasonable probability that, but for counsel's errors, there would have been a different result in the proceedings." *In re T.N.C.*, 375 N.C. 849, 854 (2020) (citation and internal quotation marks omitted).

"Our Supreme Court has explained that 'a lawyer cannot properly represent a client with whom he has no contact.'" *In re B.L.H.*, 239 N.C. App. 52, 62 (2015) (quoting *Dunkley v. Shoemate*, 350 N.C. 573, 578 (1999)). "If anything, persons faced with forced dissolution of their parental rights have a more critical need for procedural protections than do those resisting state intervention into ongoing family

affairs." *Santosky v. Kramer,* 455 U.S. 745, 753 (1982).

Mother relies heavily on *In re S.N.W.,* 204 N.C. App. at 560. In *In re S.N.W.*, the respondent was not present at the calendar call, and the trial court allowed the respondent's counsel to withdraw and not participate in the hearing after the respondent's counsel claimed the respondent had "not kept [up] with me." *Id.* at 558. During the termination hearing proceeding, which lasted fifteen minutes, the trial court ultimately terminated the respondent's parental rights. *Id.* On appeal, the respondent alleged he received ineffective assistance of counsel. *Id.* After reviewing the record and transcripts, this Court explained:

> [W]e are unable to determine that the attorney assigned in the termination matter made adequate efforts to communicate and/or consult with [the r]espondent. The trial court made no extended inquiry of trial counsel's efforts to communicate with [the r]espondent after counsel stated his attempt to return a phone call from [the r]espondent was unsuccessful. No information is provided regarding how many phone calls trial counsel may have made, whether he sent any written communication to [the r]espondent, or whether he sought help in contacting [the r]espondent through another party, such as DSS or the Department of Corrections. Evidence in the record indicates that [the r]espondent continued visitation with the children until the beginning of March 2009, and that he was incarcerated for a period of time during that month. After he was released, DSS conducted a home visit with [the r]espondent on 5 April 2009. Therefore, it is clear that DSS at least was able to communicate and meet with [the r]espondent in the period after the termination petition was filed and before the hearing was held.

*Id.* at 559–60. We noted the "lack of information in the record or transcript regarding

counsel's attempts to contact his client, along with the lack of representation at the brief fifteen-minute hearing, preclude[d] us from determining whether [the r]espondent received effective assistance of counsel, and if he was denied a fair hearing." *Id.* at 560. Based on this, we determined that

> the record before us raises questions as to whether [the r]espondent was afforded with the proper procedures to ensure that his rights were protected during the termination of his parental rights to the minor children. We are mindful that the record is replete with evidence which casts doubt on [the r]espondent's ability to parent. Nonetheless, [the r]espondent is entitled to procedures which provide him with fundamental fairness in this type of action. Accordingly, we remand for determination by the trial court regarding efforts by [the r]espondent's counsel to contact and adequately represent [the r]espondent at the termination of parental rights hearing and whether [the r]espondent is entitled to appointment of counsel in a new termination of parental rights proceeding.

*Id.* at 561 (citation omitted). Importantly, we explained that we were "concerned that the trial court, in allowing [the r]espondent's counsel to 'not participate[,'] alleviated [counsel] of his fundamental duty to advocate on behalf of [the r]espondent, thereby denying [the r]espondent effective assistance of counsel." *Id.*

Unlike the respondent's counsel's lack of participation in the termination proceedings in *In re S.N.W.*, Mother's counsel did actively participate in the proceedings by cross-examining the witnesses and asking questions. He stated in the middle of the proceedings, however: "Judge, obviously I wish my client was present so that we could provide some insight into the Court as far as this situation is

concerned. The only thing I can say is that my client was placed in a precarious situation right from the beginning." Furthermore, like the counselor in *In re S.N.W.*, Mother's counsel acknowledged a lack of contact between himself and Mother for six months even though Petitioner was in contact with Mother, having supervised a visitation the day before the hearing. Like *In re S.N.W.*, there is nothing in the Record or transcript indicating what efforts Mother's counsel made in contacting her, nor did the trial court conduct any further inquiry; thus, "we are unable to determine that the attorney assigned in the termination matter made adequate efforts to communicate and/or consult with" Mother. *Id.* at 561. In fact, Mother's counsel admitted "I don't know" when asked if Mother had been served and stated that "[Petitioner's counsel] may have some more information it sounds like."

As provided above, "a lawyer cannot properly represent a client with whom he has no contact." *In re B.L.H.*, 239 N.C. App. at 62 (citation and internal quotation marks omitted). Even if Mother's attorney's conduct was deficient, however, Mother must show her attorney's conduct was "so deficient she was denied a fair hearing[,]" *In re J.A.A.*, 175 N.C. App. at 74, such that, "but for counsel's errors, there would have been a different result in the proceedings[,]" *In re T.N.C.*, 375 N.C. at 854. Mother argues only that this issue should be remanded to determine whether her counselor took reasonable efforts to contact her, and does not provide any argument that, "but for [his] errors, there would have been a different result in the proceedings." *See id.* She does not argue that her counselor's failure to object to the denial of the

motion to continue based lack of notice prejudiced her, and we cannot make that argument for her. *See In re E.H.*, 388 N.C. 100, 101 (2025) ("[A]ppellate courts may not make arguments for parties in these juvenile cases that those parties chose not to assert for themselves."). Mother does not argue that she would have attended the hearing but for her counsel's lack of communication, nor does she argue that she would have provided testimony during the hearing or that her testimony would have concluded in a different result in the proceedings.[3] Furthermore, unlike in *In re S.N.W.*, Mother's counsel actively participated and was not "alleviated . . . of his fundamental duty to advocate on behalf of" Mother. *See In re S.N.W.,* 204 N.C. App. at 561. Thus, even assuming there was error, Mother has failed to show she was prejudiced by her counselor's actions, and we dismiss Mother's ineffective assistance of counsel claim.

## IV. <u>Conclusion</u>

Upon careful review, we conclude Mother has waived her first argument for failure to object at trial. Moreover, because Mother has not shown prejudice, she did not receive ineffective assistance of counsel.

AFFIRMED.

Judges ZACHARY and CARPENTER concur.

---

[3] Mother only makes a prejudice argument regarding the trial court's denial of the motion to continue, claiming that "[Mother] was prejudiced here, by the inability to testify at the hearing at which the fate of her family was being decided." She does not argue that a different proceeding result would have been obtained if her attorney had contacted her.

Report per Rule 30(e).